**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | **Civil Action No. 2:21-cv-1220** |
| **v.** | ) ) ) | |
| **COASTAL DRILLING EAST, LLC,** | ) ) | **COMPLAINT AND JURY TRIAL DEMAND** |
| **Defendant.** | ) ) ) | |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Party Andre Pryce. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission alleges that Defendant Coastal Drilling East, LLC subjected Andre Pryce to a hostile work environment and constructive discharge from his employment because of his race (Black) in violation of Title VII.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Western District of Pennsylvania.

**PARTIES**

3.      Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") is the

agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant Coastal Drilling East, LLC, a West Virginia limited liability company (hereinafter "Defendant"), has continuously been doing business in the Commonwealth of Pennsylvania, as well as other jurisdictions, and has continuously employed at least fifteen (15) employees.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

6.     During calendar years 2018 and 2019, Defendant employed more than 200 employees for at least 20 calendar weeks in each of those years.

## ADMNISTRATIVE PROCESS

7.     More than thirty (30) days prior to this lawsuit, Andre Pryce filed a charge of discrimination with EEOC alleging that Defendant violated Title VII by subjecting him to a hostile work environment and constructive discharge because of his race (Black).

8.     On February 12, 2021, EEOC issued to Defendant a Determination finding reasonable cause to believe that Defendant violated Title VII and inviting Defendant to join with EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory employment practices and provide appropriate relief.

9.     EEOC engaged in communication with Defendant to provide it with the opportunity to remedy the discriminatory practices described in the Determination.

10.     EEOC was unable to secure from Defendant a conciliation agreement that was

acceptable to the Commission.

11.     On April 8, 2021, EEOC issued to Defendant a Notice of Failure of Conciliation.

12.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL FACTUAL ALLEGATIONS

13.     Andre Pryce was employed by Defendant as a Rig Hand at Defendant's Graysville, Pennsylvania drill site on or about March 29, 2019.

14.     Throughout his employment, Mr. Pryce's supervisors were Defendant's Tool Pusher, Rob Steele, and Defendant's Driller, Dennis Hall.

15.     Beginning on Mr. Pryce's first day of work and continuing throughout his employment, Defendant subjected him to harassment because of his race (Black), including but not limiting to the following conduct:

(a)     Mr. Pryce's coworkers used the racial epithet "nigger" in reference to him or in his presence on multiple occasions throughout his employment.

(b)     For example, on Mr. Pryce's first day of work with Defendant, one of his coworkers said he could "nigger up" the bumper of a different coworker's vehicle in Mr. Pryce's presence.

(c)     The same coworker relayed to Mr. Pryce that a white employee of Defendant assigned to a different crew asked, in reference to Mr. Pryce, "Why don't that nigger go back to where he came from?"

(d)     On at least six occasions, a different Defendant employee walked up to Mr. Pryce and said to him, "Move, nigger."

(e)     Mr. Pryce informed his supervisor, Hall, that his coworkers had used the word "nigger" and that it offended him.

(f)     In response to Mr. Pryce's complaint about his coworkers' use of the word "nigger," Hall laughed.

(g)     In response to Mr. Pryce's complaint about his coworkers' use of the word "nigger," Hall took no action to stop Mr. Pryce's coworkers from using the racial epithet. At no time did Hall take any action calculated to stop or prevent Defendant's employees from using the word "nigger."

(h)     Mr. Pryce heard Hall use the word "nigger" on at least two occasions during his employment.

(i)     In or around April 2019, there was a large noose hanging in a trailer (which Defendant's employees referred to as a "doghouse") used by Mr. Pryce and his coworkers.

(j)     Hall saw the noose hanging in the trailer.

(k)     Hall failed to take action to remove the noose, investigate its origin, or otherwise take any other action calculated to prevent the reoccurrence of noose displays or other racial harassment.

(l)     A few weeks later, Mr. Pryce saw one of Defendant's employees make a second large noose and hang it from the trailer. The noose hung there for at least half of Mr. Pryce's shift.

(m)     Hall saw the second large noose hanging from the trailer.

(n)     Hall laughed at the second noose.

(o)     Hall failed to take action to remove the second noose, investigate its origin, or otherwise take any other action calculated to prevent the reoccurrence of noose displays or other racial harassment.

(p)     On or about October 30, 2019, Mr. Pryce was cleaning mud from the floors

after tripping out a well when one of Defendant's employees tapped him on the shoulder and said that a different coworker had a gift for him. The employee then handed Mr. Pryce a third noose.

> (q)     That same day, Mr. Pryce reported the noose to Steele.

> (r)     In response to Mr. Pryce's complaint about the noose, Steele laughed and said that he would talk to Mr. Pryce's coworkers.

> (s)     At no time prior to the end of Mr. Pryce's employment did Defendant ever investigate Mr. Pryce's report, take corrective action against Mr. Pryce's coworkers in response to that report, or otherwise take any other action calculated to stop the reoccurrence of noose displays or other racial harassment.

16.     On or about November 21, 2019, approximately three weeks after Mr. Pryce's coworker handed him a noose, Defendant temporarily laid off (furloughed) Mr. Pryce and his coworkers due to a lack of work.

17.     Defendant did not consider Mr. Pryce and his coworkers to be terminated when they were temporarily laid off on or about November 21, 2019.

18.     Defendant invited Mr. Pryce to return to work on or about January 16, 2020.

19.     Mr. Pryce declined to return to work for Defendant and instead resigned.

20.     Mr. Pryce resigned his employment with Defendant due to the acts and omissions of his coworkers and supervisors, described above, which caused him to feel compelled to resign his employment to avoid being subjected to further racial harassment.

21.     By permitting the racially hostile work environment to arise and continue, Defendant created working conditions sufficiently intolerable that a reasonable person in Mr. Pryce's circumstances would have felt compelled to resign his/her/their employment.

## CAUSES OF ACTION

### COUNT I: Hostile Work Environment Because of Race

22.     EEOC repeats and incorporates by reference the allegations set forth in Paragraphs 1-21.

23.     Defendants subjected Mr. Pryce to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of race (Black).

24.     The discriminatory practices described above were based on race and sufficiently severe or pervasive, both objectively and subjectively, to alter Mr. Pryce's terms and conditions of employment.

25.     Defendant knew or should have known about the racial harassment committed by Mr. Pryce's coworkers but failed to take prompt action reasonably calculated to stop the harassment and prevent its reoccurrence.

26.     The effect of the practices complained of in Paragraphs 22-25, above, has been to deprive Mr. Pryce of equal employment opportunities and to otherwise adversely affect his status as an employee because of race (Black).

27.     The unlawful employment practices described above were intentional.

28.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Mr. Pryce.

### COUNT II: Constructive Discharge

29.     EEOC repeats and incorporates by reference the allegations set forth in Paragraphs 1-21.

30.     Defendant knowingly permitted the discriminatory terms and conditions of

employment described above, and these terms and conditions were so intolerable that a reasonable person in Mr. Pryce's circumstances would have felt compelled to resign his/her/their employment.

31.     The effect of the practices complained of in Paragraphs 29-30, above, has been to deprive Mr. Pryce of equal employment opportunities and to otherwise adversely affect his status as an employee because of race (Black).

32.     The unlawful employment practices described above were intentional.

33.     The unlawful employment practices described above were done with malice or reckless indifference to the federally protected rights of Mr. Pryce.

## PRAYER FOR RELIEF

Wherefore, EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in, or failing to take prompt, corrective action in response to, race-based harassing conduct and other employment practices that discriminate based on race.

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and ensure Defendant's operations are free from race-based harassment and race discrimination, including but not limited to: (1) the institution of effective anti-harassment, discrimination, and retaliation policies; (2) the institution of effective reporting procedures, including but not limited to providing multiple avenues for employees to make complaints or reports of discrimination or harassment and specifying that oral complaints or reports are sufficient to trigger  an investigation; (3) the posting of notices required under Title VII; (4) mandatory training on race discrimination and harassment for all for all

management/supervisory employees who have the authority to receive complaints of discrimination and/or harassment, or the authority to take other employment actions on behalf of Defendant; and (5) mandatory training that addresses best practices and proficient techniques for conducting racial harassment investigations for all employees whose job duties include conducting such investigations.

C.      Order Defendant to submit periodic reports to EEOC identifying all complaints or observations of alleged race-based harassment and race discrimination that are received by Defendant and any corrective action taken in response to those complaints or observations.

D.      Order Defendants to make whole Mr. Pryce by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement.

E.      Order Defendant to make whole Mr. Pryce by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 13 through 33, above, which were incurred as a result of Defendant's conduct, in amounts to be determined at trial.

F.      Order Defendant to make whole Mr. Pryce by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described in Paragraphs 13 through 33, above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

G.      Order Defendant to pay Mr. Pryce punitive damages for their malicious and reckless conduct described in Paragraphs 13 through 33, above, in amounts to be determined at trial.

H.      Grant such further relief as the Court deems necessary and proper in the public

interest.

I.      Award EEOC its costs of this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

GWENDOLYN YOUNG REAMS
ACTING GENERAL COUNSEL

LISA MORELLI
ACTING ASSOCIATE GENERAL COUNSEL
WASHINGTON, D.C.

*Debra M Lawrence* by MB per authorization
DEBRA M. LAWRENCE
REGIONAL ATTORNEY
EEOC – Philadelphia District Office

*Ronald L. Phillips* by MB per authorization
RONALD L. PHILLIPS
SUPERVISORY TRIAL ATTORNEY
OH Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6714
Fax: (410) 962-4270
Email: ronald.phillips@eeoc.gov

*Megan M Block*
MEGAN M. BLOCK
TRIAL ATTORNEY
PA Bar No. 319263
EEOC – Pittsburgh Area Office

William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6934
Fax: (412) 395-5749
Email: megan.block@eeoc.gov