IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:21-cv-01220-JFC |
| v. | ) ) | Honorable Joy Flowers Conti |
| COASTAL DRILLING EAST, LLC, | ) ) ) | |
| and | ) ) | |
| COASTAL WELL SERVICE, LLC, | ) ) ) | |
| Defendants. | ) ) | |

### BRIEF IN SUPPORT OF PLAINTIFF EEOC'S MOTION FOR ENTRY OF PERMANENT INJUNCTION

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") files this Brief in Support of Plaintiff EEOC's Motion for Entry of Permanent Injunction in the above-styled and numbered action.

As stated in the accompanying Motion, EEOC requests that the Court issue a company-wide permanent injunction that will dissolve after a period of three (3) years containing the following prohibitory and mandatory provisions:

1.  Defendants shall not create, facilitate, or tolerate the existence of a hostile work environment because of race or fail to exercise reasonable care to prevent or correct harassment because of race, including but not limited to workplace use of racial slurs or epithets, racial jokes, the display of nooses, or other racially offensive words or images, or take any adverse employment action against any person because of race.

1

2. Defendants shall not authorize Robert Steel or Dennis Hall to decline to report to their managers and Defendants' human resources department any complaints, reports, or personal observations of alleged or potential racial harassment, including but not limited to workplace use of racial slurs or epithets, racial jokes, the display of nooses, or other racially offensive words or images.

3. Not later than one hundred twenty (120) days after this injunction is entered, Defendants shall be required to provide training to all employees with authority to investigate or take corrective action in response to employee complaints or their own observations of race harassment that will include at least the following subject matter: (a) Defendants' requirement that all managerial and supervisory employees have a duty under Defendants' policies to actively monitor the work environment to ensure it is free of harassment because of race and to report any instances of racial harassment to Defendants' human resources department, (b) reasonably diligent methods and techniques for conducting investigations and responding to employee complaints or personal observations of harassment; (c) formulating and implementing employment actions to correct and prevent racial harassment, and (d) the Defendants' duties under the prohibitory injunction issued in this action.

4. Defendants shall submit to EEOC reports regarding all complaints or reports received from any person concerning, or supervisor or manager observations of, potential or alleged race harassment and Defendants' response(s) to such complaints. These reports shall include the following minimum content: (a) the date of the complaint or report or supervisor or manager observation; (b) a detailed description of the complaint or report allegations or supervisor or manager observation; (c) the full name, job title, residence address, and last known phone number(s) of the person who made the complaint, report or observation; (d) the full name and job

title of all person(s) alleged or observed to have engaged in potential race harassment; (e) the full names and job titles of all personnel who conducted or participated in the investigation of such complaint; (f) the full name(s), job title(s), residence address(es), and last known phone number(s) of all persons interviewed in connection with the investigation; (g) a complete narrative description of the questions asked of, and statements made by, any persons interviewed in connection with the investigation; and (h) any investigation findings and/or corrective actions that Defendants undertook in response to each complaint, report or observation. All such reports shall be transmitted to Senior Trial Attorney Megan Block at EEOC's Pittsburgh Area Office no later than fifteen (15) days after receipt of any complaints, with a second report for each complaint due no more than fifteen (15) days after Defendants take final action in response to the complaint, report or observation.

For the reasons stated more fully below, an injunction containing the aforementioned provisions is necessary and appropriate in this case to secure the public interest in preventing Defendants Coastal Drilling East, LLC and Coastal Well Service, LLC from engaging in any further race harassment or constructive discharges as prohibited by Title VII of the Civil Rights Act of 1964, as amended.

**A. Controlling Law Requires the Issuance of an Injunction in This Case.**

Section 706(g)(1) of Title VII specifically authorizes a district court to issue an injunction when the court has found that an employer violated the Act. 42 U.S.C. § 2000e-5(g)(1). In *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), the Supreme Court held that Section 706(g)(1) not only authorizes district courts to issue injunctions, but imposes a "*duty* to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Id.* at 418 (emphasis added).

Applying this precedent, the Third Circuit has held that once a district court has identified a violation of Title VII, it "*must* order relief that will remedy past discrimination and curb the potential for future discrimination." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 485 (3d Cir. 2011) (emphasis added); *see also Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1238 (3d Cir. 1994), *vacated in part on other grounds*, 65 F.3d 1072 (3d Cir. 1995) (recognizing the court's duty to fashion equitable relief guided by Title VII's twin goals of deterrence and compensation); *EEOC v. Bob Evans Farms, LLC*, 275 F.Supp.3d 635, 669 (W.D. Pa. 2017) (Hornack, J.) (citing *North Hudson Regional Fire & Rescue* as the Third Circuit's instruction to order injunctive relief when discrimination has been identified). This holding is consistent with case law from other federal jurisdictions holding that a permanent injunction is presumptively appropriate where a violation of Title VII has occurred. *See, e.g., United States v. Gregory*, 871 F. 2d 1239, 1246 (4th Cir. 1989) ("[W]hen a plaintiff has prevailed and established a defendant's liability under Title VII, there is no discretion to deny injunctive relief completely."); *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1545 (9th Cir. 1987); *EEOC v. Rogers Bros., Inc.*, 470 F.2d 965, 965-66 (5th Cir. 1972).

Put another way, the only prerequisite for obtaining injunctive relief under Title VII is a finding that a defendant-employer has violated the Act. *See, e.g., EEOC v. Novartis Pharm. Corp.*, No. 2:05-cv-404, 2007 WL 2905892, at *5 (W.D. Pa. Sept. 28, 2007) ("The only *essential prerequisite* for the entry of injunctive relief in this case is a finding by the Court that [defendant] has intentionally engaged in, or is intentionally engaging in, an unlawful employment practice charged in the complaint.") (emphasis in original). EEOC need not prove ongoing discrimination, or a pattern or practice of discrimination, to justify injunctive relief. *See, e.g., EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 468 (6th Cir. 1999) ("It is clear that the EEOC may obtain

equitable relief that protects a class of persons from unlawful employment discrimination without citing numerous instances of such discrimination. While the right to such relief is not absolute, and the power to order it rests in the hands of the lower courts, the EEOC may seek it upon proof even of just one instance of discrimination that violates Title VII. In seeking such relief, the EEOC need not identify a class or its numbers, or even identify a pattern or practice of discrimination."); *Gregory*, 871 F. 2d at 1246 ("Under federal law, Title VII remedies have not been limited to correcting only ongoing discriminatory policies. District courts clearly have the authority and should exercise the power to grant injunctive relief even after apparent discontinuance of unlawful practices."); *EEOC v. Scott Med. Health Ctr., P.C.*, No. 16-225, 2017 WL 5493975, at *7 (W.D. Pa. Nov. 16, 2017) (Bissoon, J.) ("It is not necessary for a plaintiff to prove ongoing discrimination, or a pattern or practice of discrimination, to justify injunctive relief.").

Once a violation of Title VII has been found, a defendant-employer can only avoid injunctive relief if it proves that the type of violation at issue is unlikely to recur. *See, e.g., EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 338 (5th Cir. 2012) (holding injunction was presumptively appropriate in light of Title VII violation and rejecting the defendant-employer's argument that EEOC, not the employer, had the burden of showing that the violation at issue was likely to recur in the future); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993); *Goodyear Aerospace Corp.*, 813 F.2d at 1545 ("If the EEOC proves its case, and Goodyear fails to prove the violation will likely not recur, the EEOC will be entitled to an injunction."); *Rogers Bros., Inc.*, 470 F.2d at 965-66 (holding that when a violation of Title VII has occurred, an injunction is mandatory unless the defendant-employer presents clear and convincing proof that there was no reasonable probability of further noncompliance with the Act); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1254 (11th Cir. 1997) (reversing district court's denial of an

injunction as abuse of discretion and remanding for further proceedings to determine whether the defendant-employer proves that the violation is unlikely to recur); *Scott Med. Health Ctr., P.C.*, No. 16-225, 2017 WL 5493975, at *7; *EEOC v. Consol Energy, Inc.*, 151 F.Supp.3d 699, 711 (N.D. W. Va. 2015) ("The burden to show that injunctive relief should be curtailed is thus on the employer once a plaintiff has prevailed.").

Notably, the objectives to be secured through injunctive relief in this case are broader than Andre Pryce's interests. It is the EEOC, not Mr. Pryce, who filed this enforcement action. As the Supreme Court has held, EEOC does not function as a "proxy" for aggrieved individuals when it brings enforcement actions; rather, EEOC seeks to vindicate the public interest in remedying and preventing future Title VII violations. *See, e.g., EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002); *General Tel. of the Nw. v. EEOC*, 446 U.S. 318, 326 (1980). Thus, in determining appropriate injunctive relief, the interest of the American public as a whole in deterring future violations of Title VII must be considered.

Accordingly, in exercising its discretion to determine the extent of injunctive relief warranted, a district court must be guided by the purposes of Title VII, including the primary purpose of prophylaxis, or deterrence of future violations of law. *See, e.g., N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 485; *Mardell*, 31 F.3d at 1238; *Spencer v. General Electric Co.*, 894 F.2d 651, 660 (4th Cir. 1990), *abrogated on other grounds*, *Farrar v. Hobby*, 506 U.S. 103 (1992); *Evans v. Harnett Cty. Bd. of Educ.*, 684 F.2d 304, 306 (4th Cir. 1982) (citing *Albemarle Paper*, holding district court erred by not enjoining unlawful practices, and stating, "[Plaintiff] and other black applicants are entitled to be considered for future appointments free of the taint of the invidious discrimination that the district court found."); *Scott Med. Health Ctr., P.C.*, 2017 WL 5493975, at *7.

Of course, the injunction must be appropriately tailored. It is well established that when fashioning the terms of an injunction, the injunction should not be any broader or more burdensome than is necessary to achieve its objectives and secure complete relief. *Milliken v. Bradley*, 433 U.S. 267, 279-80 (1977); *see also N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 485 ("Although district courts are afforded substantial discretion in fashioning injunctive relief, it should not be broader than required to provide a full remedy to the injured party.").[1]

### B. Given the Facts Proven at Trial, an Injunction is Warranted to Secure the Public Interest and Prevent Future Title VII Violations of this Nature.

At trial, EEOC proved that Defendants violated Title VII by subjecting Andre Pryce to unlawful racial harassment and constructive discharge because of race. Thus, Defendants have the burden of proving that these Title VII violations are unlikely to recur. Defendants cannot meet their burden.

Courts have found that violations are likely to recur, and that injunctive relief is warranted, where the individuals who were involved in the discrimination through direct participation or by condoning the unlawful conduct remain employed by the defendant and in positions of authority. *See, e.g., EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1579 (7th Cir. 1996) (affirming permanent injunction where decision-makers who engaged in religious discrimination remained primary decision-makers regarding accommodations); *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815,

---

[1] In *ebay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), the Supreme Court articulated a familiar four-factor test to determine permanent injunctive relief, which in that case involved injunctive relief for violations of the Patent Act: (1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Id. at 291. These factors inform the Court's discretion, though as the Supreme Court earlier instructed in *Albemarle Paper*, they are to be applied with due regard to the affirmative duty of the district court to enter a decree that eradicates present effects of past discrimination and prevents future violations of Title VII.

7

817 (7th Cir. 1990) (affirming permanent injunction where supervisor who failed to take corrective action to stop harassment was still employed by the defendant when the district court issued the injunction); *Bundy v. Jackson*, 641 F.2d 934, 946 n. 13 (D.C. Cir. 1981) (reversing denial of injunctive relief in harassment case in part because the employees who engaged in the harassment remained employed by the defendant); *Scott Med. Health Ctr.*, 2017 WL 5493975, at *7 (issuing permanent injunction in part because the defendant official who tolerated and ratified Title VII harassment was still employed by defendant); *Consol Energy, Inc.*, 151 F.Supp.3d at 713 (issuing permanent injunction in part because the employees involved in the discrimination were still employed by the defendant); *see also EEOC v. KarenKim, Inc.*, 698 F.3d 92, 100-101 (2d Cir. 2012) (holding district court abused discretion by not issuing an injunction barring defendant from reemploying terminated harasser and barring defendant from allowing him on premises; noting continuing ability of harasser to have access to store).

Courts have also found that violations are likely to recur, and that injunctive relief is warranted, where there is no evidence that a defendant-employer has implemented training, policies, or programs specifically designed to prevent recurrence of the violations found by the jury. *See, e.g., Bundy*, 641 F.2d at 946 n. 13; *see also Goodyear*, 813 F.2d at 1544-45 (holding that court abused discretion in denying injunctive relief because employer had failed to prove that it was unlikely to repeat violations).

Here, the evidence at trial and the jury's fact-finding demonstrates that there is a substantial risk of future Title VII violations. Specifically, at trial, the jury found that Defendants subjected Andre Pryce to unlawful racial harassment perpetrated by supervisor Dennis Hall and employees Camrin Stalnaker and Jacob Hernandez. The racial harassment included the frequent use of racial slurs, such as the N-word, and the presence of three nooses at the jobsite. In rendering its verdict

in favor of EEOC, the jury necessarily found that Hall and Steel possessed actual knowledge of the racial harassment. Mr. Pryce followed Defendants' harassment policy and reported Stalnaker's use of the N-word to his supervisor, Dennis Hall. Mr. Pryce also reported the third noose, the noose that Hernandez handed him as a so-called "gift" from Stalnaker, to his supervisor, Robert Steel. (Trial Tr. 12, 36, Nov. 29, 2022, attached as Ex. 1).

Moreover, supervisors Robert Steel and Dennis Hall admitted at trial that although it was part of their jobs to stop racial harassment by taking corrective action and to report any harassment to human resources, neither of them ever disciplined Stalnaker or Hernandez for any racial harassment or reported any racial harassment to human resources. (Trial Tr. 62-64, 71, 92, 95, 97, 100-101, Nov. 30, 2022, attached as Ex. 2). Thus, Steel knowingly tolerated the harassment by failing to take corrective action to stop it and by failing to report it to human resources. Hall not only condoned the harassment for the same reasons, but also actively participated in it by using the N-word at the jobsite and laughing at the other incidents of harassment that he observed. (Trial Tr. 16, 21-26, 30-33, Nov. 29, 2022, attached as Ex. 1). Notably, at trial, Steel and Hall testified that they are still employed by Defendants as supervisors and therefore still present an unreasonable risk that they will tolerate (or, in Hall's case, perpetrate) a racially hostile work environment. (Trial Tr. 59, 90-91, Nov. 30, 2022, attached as Ex. 2). Thus, Defendants cannot prove that their violations of Title VII are unlikely to recur, and an injunction is necessary and appropriate in this case. *Ilona of Hungary, Inc.*, 108 F.3d at 1579; *Gurnee Inn Corp.*, 914 F.2d at 817; *Bundy*, 641 F.2d at 946 n. 13; *Scott Med. Health Ctr.*, 2017 WL 5493975, at *7; *Consol Energy, Inc.*, 151 F.Supp.3d at 713.

Trial testimony from Defendants' officials further demonstrates, in part, why these Title VII violations occurred and why they are likely to recur in the future. Specifically, Defendants'

General Manager, Kevin Wright, testified that white employees can use the N-word at the worksite without violating Defendants' harassment policy, and that supervisors have no duty to report white employees' use of the N-word, or any other racial slur, to human resources if they can "handle it" at the jobsite. (Trial Tr. 126-28, Nov. 30, 2022, attached as Ex. 2). Similarly, Defendants' Human Resources Director, Christopher Willis, testified that supervisors have the discretion to decide whether to report harassment that occurs to human resources. (Trial Tr. 24, Dec. 1, 2022, attached as Ex. 3). According to Willis, if supervisors can "resolve it" in the field, then there is no need for them to report the harassment up the chain-of-command or to human resources. (Trial Tr. 25, Dec. 1, 2022, attached as Ex. 3).

While Defendants provide supervisors in the field with discretion over harassment complaints or observations, they do not provide them with the training to exercise that discretion in a reasonably diligent manner. At trial, Robert Steel and Dennis Hall testified that they never received any training on how to conduct investigations of harassment. (Trial Tr. 66, 96-97, Nov. 30, 2022, attached as Ex. 2). Hall specifically testified that he was never trained regarding what questions he should ask, how to assess the credibility of someone he talked to, or what corrective or disciplinary action he should take if someone engaged in racial harassment. (Trial Tr. 97, Nov. 30, 2022, attached as Ex. 2). According to Willis, the only training that Defendants' supervisors receive is a review of Defendants' harassment policy and a generic 20-minute training video on harassment and discrimination in the workplace.[2] (Trial Tr. 35-36, 38-39, Dec. 1, 2022, attached

---

[2] Willis also testified that Wright occasionally asks him to speak about harassment at bi-monthly trainings for supervisors. However, as Wright explained, he only reviews Defendants' harassment policy, his expectations for supervisors, and some additional examples of harassment during these trainings. (Trial Tr. 39-40, Dec. 1, 2022, attached as Ex. 3).

as Ex. 3). This training is provided at a supervisor's initial onboarding and again at Defendants' annual refresher trainings. *Id.*

Defendants offered no evidence at trial or otherwise that they train their supervisors, such as Robert Steel and Dennis Hall, how to "resolve" or "handle" harassment at the jobsite. In fact, the evidence at trial, most of which was admitted by defense-aligned witnesses, demonstrates that Defendants give supervisors the discretion to decide whether to report harassment to human resources based on the premise that supervisors can "resolve" or "handle" it at the jobsite, even though Defendants never train their supervisors how to properly investigate harassment or what corrective or disciplinary actions are appropriate to take to stop it. (Trial Tr. 66, 96-97, 126-28, Nov. 30, 2022, attached as Ex. 2; Trial Tr. 24-25, Dec. 1, 2022, attached as Ex. 3). Defendants offered no evidence at trial or otherwise that they have abandoned this practice, or that they have implemented any training, policies, or programs specifically designed to prevent the violations found by the jury from recurring. Thus, an injunction in this case is necessary to prevent future violations of Title VII. *See, e.g., Bundy*, 641 F.2d at 946 n. 13; *see also Goodyear*, 813 F.2d at 1544-45.

### C. The Proposed Injunction is Appropriately Tailored.

The first injunctive provision set forth above is prohibitive in nature and pertains specifically and only to the Title VII violations found in this case. Thus, it is narrowly tailored and clearly calculated to prevent recurrence of the conduct that gave rise to Defendants' violations in this case.

The second injunctive provision set forth above is mandatory in nature and prohibits Defendants from authorizing Robert Steel or Dennis Hall to decline to report to their managers and Defendants' human resources department any complaints, reports, or personal observations of

alleged or potential racial harassment. In reaching the verdict, the jury necessarily found that Steel and Hall declined to report Andre Pryce's complaints (and in Hall's case, personal observations) of racial harassment. Permitting these supervisors to exercise discretion in deciding whether to report harassment up the chain-of-command or to human resources, especially before they receive additional training, presents an unreasonable risk of further violations of Title VII. Thus, this provision should help prevent and deter future unlawful racial harassment and encourage compliance with the aforementioned prohibitory injunctive provision.

The third injunctive provision set forth above is mandatory in nature and requires the Defendants to undertake training calculated to prevent future violations of Title VII of the type found in this case. Training specific to the duties of managerial and supervisory employees under Defendants' policies, lawful methods for conducting investigations, and formulating appropriate corrective action to stop harassment, if delivered with reasonable proficiency, should help prevent and deter any future unlawful racial harassment, thereby encouraging compliance with the aforementioned prohibitory injunctive provision.

The fourth injunctive provision set forth above is mandatory in nature and requires that Defendants report future internal complaints of racial harassment to EEOC to prevent future violations of Title VII of the type found in this case. The transparency these reports provide should help prevent and deter any future unlawful racial harassment and encourage compliance with the aforementioned prohibitory injunctive provision. The reports will also enable EEOC to alert the Court to any violations of the Court's prohibitory injunction.

Date: January 3, 2023                    Respectfully submitted,

/s/ Megan M. Block
Megan M. Block
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
PA Bar No. 319263
EEOC – Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6934
Fax: (412) 395-5749
Email: megan.block@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2023 a true and correct copy of Plaintiff EEOC's Motion for Permanent Injunction was served via the Court's CM/ECF system upon the following attorneys of record:

Sunshine R. Fellows
Chloe C. Zidian
Cynthia L. O'Donnell
Paul Shane Miller
Lewis Brisbois Bisgaard & Smith LLP
One PPG Place
28th Floor
Pittsburgh, PA 15222
sunshine.r.fellows@lewisbrisbois.com
chloe.zidian@lewisbrisbois.com
cynthia.odonnell@lewisbrisbois.com
shane.miller@lewisbrisbois.com

*Counsel for Defendants Coastal Drilling East, LLC and Coastal Well Service, LLC*

Respectfully submitted,

/s/ Megan M. Block
Megan M. Block
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
PA Bar No. 319263
EEOC – Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6934
Fax: (412) 395-5749
Email: megan.block@eeoc.gov