IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) | Civil Action No. 2:21-cv-01220-JFC |
| | ) | |
| v. | ) ) | |
| COASTAL DRILLING EAST, LLC, | ) ) | |
| and | ) ) | |
| COASTAL WELL SERVICE, LLC, | ) ) | |
| Defendants. | ) | |

## OPINION

### I.    Introduction

Plaintiff U.S. Equal Employment Discrimination Commission ("EEOC") filed this action against defendants Coastal Drilling East, LLC, and Coastal Well Service, LLC (together with Coastal Drilling East, LLC, "Coastal Drilling" or "defendants") alleging that defendants created a hostile work environment and constructively discharged their former employee, Andre Pryce ("Pryce"), because of his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e(17), and 42 U.S.C. § 1981. This case was tried before a jury, and, on December 5, 2022, the jury found in favor of the EEOC on both claims. The jury awarded Pryce $24,375.00 in compensatory damages.

Currently pending before the court are filings by the parties addressing four disputes over Coastal Drilling's payment of back pay to Pryce. The EEOC and Coastal Drilling argue about whether: (1) per diem expense reimbursements are a proper component of the back pay award; (2) the total aggregate amount Pryce's earnings subsequent to his separation from Coastal Drilling should be deducted from the amount he would have earned at Coastal; (3) prejudgment

interest should be measured as simple interest or compounded quarterly; and (4) equitable relief should include additional compensation to offset any alleged negative tax implications the back pay award may create.

As set forth in this opinion, under the specific circumstances of this case, the per diem payments will not be included in Pryce's back pay award. The relevant back pay period began on January 16, 2020, and ended on February 7, 2021, and, therefore, any income earned after that period will not be included in the back pay calculation. Prejudgment interest compounded annually is appropriate to strike the balance between awarding Pryce the time value of his earnings while not punishing Coastal Drilling for the time that lapsed before resolution of this case. The court is inclined to award Pryce a monetary amount to account for the negative tax implications created by the back pay award, i.e., a "tax gross up." The parties dispute, however, whether the EEOC must support its request for a tax gross up with expert evidence. In any event, the EEOC's proposed calculation of the tax gross up in not in accordance with the court's rulings in this opinion. The denial of the EEOC's request for a tax gross up is, therefore, without prejudice to a renewed request supported by a calculation agreed to in good faith by the parties or an expert calculation of the tax gross up to which Pryce is entitled.

## II.    Procedural History and Background

### A.  Procedural History

On December 5, 2022, a jury returned a verdict in favor of the EEOC with respect to its Title VII claims for hostile work environment and constructive discharge against Coastal Drilling. (ECF No. 79.) At the conclusion of the trial, the court scheduled a post-trial equitable remedies hearing to address the payment of back pay and injunctive relief. On January 3, 2023, the EEOC filed a motion for permanent injunction. (ECF No. 82.) On January 5, 2023, the

parties filed a joint motion to continue the post-trial equitable remedies hearing. (ECF No. 85.)

The court granted the motion, continued the hearing, and ordered the parties to file joint

stipulations that described the items the parties agreed upon and explained the unresolved issues.

(ECF No. 86.)

The joint stipulations provide, in pertinent part:

- Pryce's pay and time records from Coastal Drilling and his other employers are authentic, accurate, and admissible (id. ¶¶ 1-3);

- Coastal Drilling agreed with and does not challenge Pryce's mitigation efforts (id. ¶ 4);

- Pryce was employed by Coastal Drilling from March 29, 2019, through January 16, 2020, and worked a total of 36 workweeks for Coastal Drilling during that time (id. ¶ 5);

- Pryce earned bonuses that on average equate to payment of an additional $15.00 per week, and those payments are properly included in the computation of Pryce's back pay award (id. ¶ 6);

- Pryce worked an average of 44 hours per week during the 36 workweeks for Coastal Drilling (id. ¶ 7);

- Pryce earned a wage rate of $15.75 per hour when his employment with Coastal Drilling ended in January 2020 (id. ¶ 8);

- Pryce would have received a wage rate increase to $17.00 per hour from Coastal Drilling effective May 30, 2021 (id. ¶ 9);

- Pryce would have received a wage rate increase to $19.00 per hour from Coastal Drilling effective April 29, 2022 (id. ¶ 10);

- when Pryce was employed by Coastal Drilling he was eligible to receive a per diem payment, which was dependent on the location of Pryce's assigned jobsite and ranged from $45 per day to $55 per day (id. ¶ 11);

- on average, Pryce received per diem payments totaling $245 per week, and he would have remained eligible to receive per diem payments had he remained employed with Coastal Drilling (id. ¶ 12);

- Coastal Drilling did not treat the per diem payments as taxable income to Pryce (id.);

-   the amount of per diem paid to Pryce was based upon the location of his assigned job site regardless of what actual expenses he may or may not have incurred (id. ¶ 13);

-   Coastal Drilling intended the per diem payments to be used as reimbursement for meals and incidentals, but did not have a written policy during Pryce's employment with Coastal that required employees to expend their per diem funds on specific items or expenses (id. ¶ 14);

-   Pryce was not required to submit expense reports, receipts, or any other information about any expenses that he incurred (id. ¶ 15);

-   an award of prejudgment interest at the Internal Revenue Service ("IRS") payment rate set forth at 26 U.S.C. § 6621(a)(2) is appropriate (id. ¶ 16);

-   four injunctions should be ordered as part of the final judgment in this case (id. ¶ 17); and

-   the injunctive relief will remain in effect for a period of two years, after which time the injunctions shall automatically dissolve (id. ¶ 18).

The parties' joint stipulations also described four issues that remained in dispute as follows:

1.   The EEOC contends that Mr. Pryce's backpay award should include $245 per week attributable to per diem payments for which he was eligible during his employment with Coastal. Coastal contends that per diem expense reimbursements are not a proper component of the backpay award.

2.   The EEOC contends that Mr. Pryce's prejudgment interest award should be calculated using the Parties' stipulated rate compounded quarterly. Coastal contends that Mr. Pryce's prejudgment interest award should be calculated using simple interest at the Parties' stipulated rate.

3.   EEOC contends that the proper methodology for calculating Mr. Pryce's backpay is to set off amounts that he would have earned at Coastal during the back pay liability period by his interim earnings during the same backpay liability period, and that his earnings for the period after he fully mitigated his damages are irrelevant as a matter of law. Coastal contends that the proper methodology for calculating Mr. Pryce's backpay is to take the difference between his actual wages earned and the wages he would have earned as an employee of Coastal.

4.   EEOC contends that in order for Mr. Pryce to be made whole, he should be awarded an additional sum to compensate him for the increased tax burden that results from receiving a lump sum backpay award in a single year that represents wages that would have otherwise been earned over multiple years and taxed at lower marginal rates. Defendants contends that Mr. Pryce is not

4

entitled to an offset for tax consequences of receipt of a lump sum in a single tax year.

(Id. at 5-6.)

On February 13, 2023, the parties filed a joint motion to submit briefing in lieu of the post-trial equitable remedies hearing, which the court granted. (ECF Nos. 91, 93.) On March 2, 2023, the parties each filed an opening brief addressing the four unresolved issues. (ECF Nos. 94, 95.) The EEOC attached four exhibits to its opening brief, including an affidavit from Pryce, the contents of which are described below. (ECF Nos. 94-1, 94-2, 94-3, 94-4.) Coastal Drilling attached one exhibit to its opening brief. (ECF No. 95-1.) On March 9, 2023, the parties filed responses in opposition to each other's opening briefs. (ECF Nos. 96, 97.) On March 14, 2023, the EEOC with leave of court filed a reply brief. (ECF No. 100.)

On July 12, 2023, the court ordered Coastal Drilling to file an affidavit addressing whether compensation to employees (like Pryce) included per diem payments for days on which the employees utilized paid vacation or sick leave. On July 14, 2023, Coastal Drilling filed an affidavit with the court by Kevin Wright ("Wright"), general manager of defendant Coastal Well Service, LLC. (ECF No. 102.)

### B. Pryce's Affidavit

Following Pryce's constructive discharge from Coastal Drilling, he was unemployed from January 16, 2020, to February 6, 2021. (ECF No. 94-1 ¶ 1.)  From February 7, 2021, to July 24, 2021, i.e., twenty-three weeks, Pryce worked for Heartland Fabrications and earned an average weekly wage rate of $789.83 per week. (Id. ¶ 2.) Pryce was unemployed from July 25, 2021, until August 12, 2021. From August 13, 2021, to October 8, 2021, i.e., nine weeks, Pryce worked for Eagle Wings Transportation and earned an average weekly wage rate of $532.04. (Id. ¶ 4.) Pryce was unemployed from October 9, 2021, until November 30, 2021. (Id. ¶ 5.)

5

From December 1, 2021, to January 22, 2022, Pryce worked for Western Express and earned an average weekly wage rate of $622.36. (ECF No. 94-1 ¶ 6.) Pryce was unemployed from January 23, 2022, to February 9, 2022. (Id. ¶ 7.) On February 10, 2022, Pryce began work for CRST and is currently employed by CRST. Throughout Pryce's employment with CRST, he earned an average weekly wage rate of $1,623.00. In 2022, Pryce worked for CRST for a total of forty-six workweeks. (Id. ¶ 8.)

In 2020, 2021, and 2022, Pryce's tax preparer applied the head of household standard deduction on his tax returns. (ECF No. 94-1 ¶ 9.) Pryce anticipates that his tax preparer will apply the head of household standard deduction on his 2023 tax return because he is claiming at least one dependent. (Id.) In 2020, Pryce's total gross income was $37,350.00, which included $37,350.00 in unemployment compensation. He had no other income that year. (Id. ¶ 10.) In 2021, Pryce's total gross income was $43,138.70, which included $17,811.94 in wages from Heartland Fabrications, $4,673.74 in compensation from Eagle Wings Transportation, $1,735.02 in wages from Western Express, and $18,918 from unemployment compensation. (Id. ¶ 11.) Pryce had no other income that year. (Id.)  Pryce's gross income for 2022 was $74,662.48, which he earned from CRST. Pryce had no other income in 2022. (Id. ¶ 12.) Pryce does not anticipate any wage increases from CRST in 2023. (Id. ¶ 13.)

### C.  Wright's Affidavit

Wright's affidavit provided:

-   during Pryce's employment with Coastal Drilling from March 29, 2019, through January 16, 2020, defendant Coastal Drilling East, LLC did not pay per diem to any employee, including employees in Pryce's position, for days on which the employee was on vacation or used sick leave;

-   as of July 14, 2023, defendant Coastal Well Service, LLC follows the same policy and does not pay per diem to any employee, including employees in Pryce's former position, for days on which the employees use paid vacation or sick leave; and

- according to Coastal Well Service, LLC's policy per diem is an expense reimbursement for employees on business required travel status.

(ECF No. 102.)

## III.   Discussion

### A.  General Law

One district court recently explained:

Title VII permits a successful plaintiff to seek equitable relief in the form of backpay, front pay, or "any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). The award of equitable relief rests in the discretion of the trial court. Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 78 n.1 (3d Cir. 2009). This is true even where a jury has provided an advisory verdict as to backpay and front pay. Id.; see also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 249 (3d Cir. 2013) ("District courts are [ ] free to reject [advisory juries'] verdicts, as long as doing so is not independently erroneous." (citation omitted)).

Backpay and front pay calculations necessarily involve an element of prediction, specifically as to what the plaintiff would have made absent the employer's wrongful conduct. That said, the law favors awarding backpay and front pay to the successful Title VII plaintiff. Caufield v. Ctr. Area Sch. Dist., 133 F. App'x 4, 13 (3d Cir. 2005) ("[B]ack-pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of Title VII."). As a result, "all that is required is that sufficient facts be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture." Scully v. US WATS, Inc., 238 F.3d 497, 515 (3d Cir. 2001) (cleaned up); see also NLRB, CASEHANDLING MANUAL § 10540.1 (October 2020) ("The determination of gross backpay is not based on an unattainable standard of certainty. Rather, gross backpay must merely be based on a reasonable method and reasonable factual conclusions."). Any ambiguity that arises in the backpay and front pay calculation is construed against the employer. Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101 (3d Cir. 1995) (quoting Goss v. Exxon Office Systems Co., 747 F.2d 885, 889 (3d Cir. 1984)).

…

Title VII authorizes a court in its discretion to award backpay to a successful claimant in order to "make persons whole for injuries suffered through past discrimination." Booker v. Taylor Milk Co., 64 F.3d 860, 864 (3d Cir. 1995)

(cleaned up). To calculate the award, the Court must take "the difference between the wages that the plaintiff would have earned absent discrimination and the wages that he or she actually earned," from the date of the unlawful termination to the date judgment is entered in the plaintiff's favor. <u>Newton v. Pa. State Police</u>, No. 18-1639, 2022 WL 874306, at *8 (W.D. Pa. Mar. 24, 2022) (Kelly, J.) (citing <u>Durham Life</u>, 166 F. 3d at 156 and <u>Gallo v. John Powell Chevrolet, Inc.</u>, 779 F. Supp. 804, 813 (M.D. Pa. 1991)). There is a presumption in favor of backpay awards to the successful Title VII plaintiff, but that presumption is conditioned on the plaintiff's statutory duty to mitigate his damages. <u>Booker</u>, 64 F.3d at 864.

<u>Kengerski v. Cnty. of Allegheny</u>, No. 2:17-CV-1048-NR, 2023 WL 348959, at *1-3 (W.D. Pa. Jan. 20, 2023).

### B.  Whether the back pay award shall include per diem payments

The EEOC argues that the award of back pay should include the approximately $245.00 per week Pryce received as per diem payments while employed by Coastal Drilling, which would total approximately $40,000.00 in per diem reimbursements as part of Pryce's back  pay award. Coastal Drilling argues the per diem payments should not be included as part of Pryce's back pay award because they were not "wages," "were intended to reimburse meals and other incidental expenses," and were not treated as taxable income to Pryce. (ECF No. 95 at 4-5.)

The parties did not cite to any decision in which a court addressed this issue, i.e., whether in a Title VII discrimination case per diem is a proper component of a back pay award. The EEOC, as the plaintiff in this case, bears the burden of proving by a preponderance of the evidence the amount of back pay "with reasonable certainty, not with the same exactitude that may apply to proof of lost profits in a breach of contract case." ROGER MASTALIR, EMPLOYMENT DISCRIMINATION LAW AND PRACTICE 271 (Wolters Kluwer Legal & Regulatory U.S. 2020) (citing <u>Pittington v. Great Smoky Mountain Lumberjack Feud, LLC</u>, 880 F.3d 791, 799 (6th Cir. 2018)); <u>Koch v. Mack Trucks, Inc.</u>, No. CV 16-4857, 2018 WL 2461921, at *5 (E.D. Pa. June 1, 2018) ("A plaintiff must prove entitlement to back pay by a preponderance of the evidence."). In

support of its argument that Pryce's back pay award should include the per diem payments, the

EEOC cited decisions arising in cases filed under other employment-related statutes, e.g., the

Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Longshore and Harbor Workers'

Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., and the National Labor Relations Act,

29 U.S.C.A. § 151 et seq.

The decisions cited by the EEOC are helpful to this court's consideration whether the per

diem payments made to Pryce should be included in his back pay award. In the decisions cited

by the EEOC, the courts considered numerous factors to determine whether per diem payments

may be included as reimbursable wages to an employee. Stone v. Troy Construction, LLC, 935

F.3d 141 (3d Cir. 2019) (finding in a FLSA case that there was a triable issue of fact with respect

to the employer's willfulness in excluding per diem payments from overtime payment

calculations because, among other reasons, per diem was paid to local employees who the

employer knew did not incur travel expenses); Baouch v. Werner Enterprises, Inc., 908 F.3d

1107, 1118 (8th Cir. 2018) (finding under the FLSA that untaxed payments for meals and other

incidental expenses were wages because the employees could spend the payments on items other

than meals and incidentals, the employees did not have to report expenses or provide receipts,

the payments were based upon the number of hours worked, and the employer created the

program to attract new employees by "maximizing take home pay"); B & D Contracting v.

Pearley, 548 F.3d 338 (5th Cir. 2008) (finding that under the LHWCA, wages were not limited to

taxable compensation and included per diem payments because they were paid at an hourly rate,

did not directly correspond to actual expenses incurred, were awarded to local employees who

did not incur travel expenses, were intended to maximize employee take home pay, provide tax

benefits to the employer, and constituted half the employee's gross pay); Custom Ship Interiors

v. Roberts, 300 F.3d 510, 512 (4th Cir. 2002) (finding that under the LHWCA, the regular per diem payments made to employees were properly included as wages because the employer knew the employees were not incurring expenses needing reimbursement and continued to pay them per diem).

      Consideration of the factors addressed by the courts in the foregoing decisions shows that, while it is a close call, the per diem payments should not be included in Pryce's back pay award. In other words, the EEOC did not satisfy its burden to show that it is more likely than not that the amount of back pay to which Pryce is entitled includes the per diem payments. First, the parties stipulated that Coastal Drilling intended the per diem payments to be used as reimbursement for meals and incidentals. Coastal Drilling's intention in this regard stands in contrast to the employers' intentions in B & D Contracting and Baouch, which included maximizing the employees' take-home pay via untaxed per diem payments. Second, Coastal Drilling did not make per diem payments to employees like Pryce while the employees were on vacation or utilizing sick leave. In other words, there is evidence to show that Coastal Drilling did not use the per diem payments when it knew the employees were not incurring expenses for meals and incidentals. In Custom Ship and Stone, however, there was evidence that the employers paid the employees per diem even though they knew some of the employees (such as local employees) were not incurring travel expenses. Third, the per diem payments were based upon the location of Pryce's jobsite, rather than the number of hours worked. The foregoing factors support a finding that the per diem payments should not be included as part of Pryce's back pay award.

      The court acknowledges that—in support of the EEOC's position that the per diem payments should be included in the back pay award—Coastal Drilling included the per diem

payments in Pryce's regular pay and Pryce was not required to report expenses or produce receipts, and, therefore, Pryce *could* spend those payments on items other than meals and incidentals. The court finds, however, that the scales tip in favor of a finding that the per diem payments should not be included in the back pay award based upon the parties' stipulation that Coastal Drilling intended that per diem be used for meals and incidentals, that Coastal Drilling did not pay employees on days on which they utilized vacation or sick days, and the per diem payments were based upon jobsite location, rather than number of hours worked. Based upon the foregoing, the approximately $40,000.00 in per diem payments will not be included in Pryce's back pay award.

### C.  The relevant period for the calculation of back pay

The parties dispute the methodology the court should use to calculate Pryce's back pay award and whether Coastal Drilling's back pay obligations in this case should be reduced by Pryce's earnings at CRST. The EEOC argues the court should use the "quarterly earnings methodology" or the "periodic mitigation" method to calculate Pryce's back pay award. Under the EEOC's approach, the back pay period in this case ended when Pryce obtained higher-paying employment with CRST on February 10, 2022.  Coastal Drilling argues the court should use the "aggregate mitigation" method to calculate Pryce's back pay award, pursuant to which the back pay period extends until the date of this court's order awarding back pay.

One district court has explained:

> There are two ways to calculate back pay: (1) the periodic mitigation method, and (2) the aggregate mitigation method. The periodic mitigation method compares the plaintiff's anticipated wages for certain periods (often calendar years) with their actual earnings during those periods. Barnett v. PA Consulting Grp., Inc., 35 F. Supp. 3d 11, 23 (D.D.C. 2014). The plaintiff is entitled to back pay for any period in which their anticipated earnings would have exceeded their actual earnings, with no offset for periods in which actual earnings exceeded anticipated

earnings. <u>Id.</u> The aggregate method compares the plaintiff's anticipated earnings
with their actual earnings over the entire recovery period. <u>Id.</u> <u>See</u> <u>Wirtz v. Kansas</u>
<u>Farm Bureau Servs., Inc.</u>, 274 F. Supp. 2d 1215, 1218 (D. Kan. 2003) ("If the
calculation is performed over the entire time span between termination and trial, it
is sometimes termed the 'aggregate' method."). If the plaintiff's anticipated
earnings are inferior to their actual earnings, in the aggregate, the plaintiff cannot
recover back pay. <u>Barnett</u>, 35 F. Supp. 3d at 23.

<u>Gnassi v. Toro</u>, No. 3:20-CV-06095-JHC, 2023 WL 3018447, at *12 (W.D. Wash. Apr. 20,

2023).

At the heart of the parties' dispute with respect to which methodology to use to calculate

Pryce's back pay award is the determination of the date on which the back pay period was

terminated in this case. The parties agree that the back pay period began on January 16, 2020,

when Pryce's employment with Coastal Drilling ended. According to the EEOC, the back pay

period ended on February 10, 2022, when Pryce obtained the higher-paying job at CRST, and,

"[i]t is well established under controlling law that once an employee has fully mitigated his

damages, any excess wages that he earned form a better paying job should not be deducted from

the backpay award." (ECF No. 94 at 4-5.) Costal Drilling argues that the back pay period in this

case should end on the date of this court's order authorizing the back pay award. (ECF No. 87 at

3.)

One treatise has explained:

> Because an award of back pay compensates the plaintiff for economic losses
> caused by the illegal discrimination, the back-pay accrual period ends when the
> plaintiff no longer suffers the economic effects of the discrimination, which
> generally is the date judgment is entered….There are, however, other events that
> will terminate the back-pay accrual period, such as resignation, retirement, or
> termination for misconduct….Regardless of the event triggering the termination of
> back pay, the employer maintains the burden of proof of this issue….
> 
>                                      …
> 
> The back-pay accrual period typically will end when a plaintiff assumes a
> comparable position…or higher-paying...employment.

Barbara T. Lindemann, Paul Grossman, Geoff Weirich, Employment Discrimination Law 41-25—41-26 (Geoff Weirich ed., Bloomberg Law 2020) (1983).

The court in EEOC v. Unitek, USA, LLC, No. CIV.A. 08-4592, 2010 WL 1626617, at *2 (E.D. Pa. Apr. 19, 2010), addressed a similar dispute in a case arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34. In Unitek, the defendant-employer argued that the plaintiff-employee earned more money between the date of the alleged adverse employment action and the date of judgment, and, therefore, the employee was not entitled to a back pay award. The defendant-employer relied upon the Third Circuit Model Jury Instructions, which provide that the back pay period ends on the date of the jury's verdict and that the jury must "deduct from the back pay figure whatever wages [plaintiff] has obtained from other employment during this period." Id. at *1 (citing Third Circuit Model Jury Instructions for Claims Under the Age Discrimination in Employment Act at 41, available at https://www.ca3.uscourts.gov/sites/ca3/files/8_Chap_8_July_2023.pdf, Instruction 8.4.2).[1] The EEOC argued in response that the Third Circuit Model Jury Instructions did not account for the circumstances of that case, i.e., a case in which the employee obtains a higher-paying job after the adverse employment action. According to the EEOC, the back pay period ended when the employee obtained high-paying employment, and, therefore, he was entitled to back pay "for the period between his alleged adverse employment action through the commencement of his higher-paying job." Id. at *1.

---

[1]     The Third Circuit Model Jury Instructions provide a similar instruction for back pay awards in Title VII  cases. Third Circuit Model Jury Instructions for Claims Under the Age Discrimination in Employment Act at 85, available at https://www.ca3.uscourts.gov/sites/ca3/files/5_Chap_5_July_2023.pdf, Instruction 5.4.3.

The court in <u>Unitek</u> recognized that there was "limited authority" in the Third Circuit with respect to a "back pay damage calculation where an ADEA plaintiff secures higher-paying employment after the alleged discriminatory action but prior to judgment." <u>Id.</u> at *2. The court discussed three decisions arising under the ADEA in which the courts found the employees were not entitled to back pay because their severance and new employment, which was secured immediately upon ending employment with the defendant-employers, exceeded the earnings they would have received from the defendant-employers had they remained employed. <u>Id.</u> at *2 (citing <u>Blum v. Witco Chem. Corp.</u>, 829 F.2d 367, 374 (3d Cir. 1987); <u>Anderson v. Consolidated Rail Corp.</u>, Civ. A. 98-6043, 2000 WL 1622863, at *2 (E.D. Pa. Oct. 25, 2000); <u>Sinclair v. Ins. Co. of N.A.</u>, 609 F.Supp. 397, 400-02 (E.D. Pa. 1984)). The court in <u>Unitek</u> rejected the reasoning of the defendant-employer and held that the back pay period ended on the date on which the employee obtained higher-paying employment. The court explained:

> As detailed above, all of the cases found by the Court involve plaintiffs who were terminated for age-related discriminatory reasons, received severance, and then found new employment. Here, plaintiff did not find other employment until August 2006, and unlike the plaintiffs in the cases discussed above, he was not receiving severance between the date of his alleged age-related discriminatory action and the commencement of his new employment. In light of the goal of the ADEA to deter employers from engaging in age-related discrimination and of the fact that Mr. Bruno was, in fact, unemployed without the support of severance payments for a period of time, the Court determines that should Plaintiff succeed in proving Defendant liable, Mr. Bruno is eligible for back pay for the time from his alleged harm until the start of his employment with SPS, and that the accrual of back pay tolls on that date. *E.g., Taddeo v. Ruggiero Farenga, Inc.,* 102 F.Supp.2d 197 (S.D.N.Y.2000).

<u>EEOC v. Unitek, USA, LLC</u>, No. CIV.A. 08-4592, 2010 WL 1626617, at *2 (E.D. Pa. Apr. 19, 2010).

Based upon the foregoing, the court will use the periodic methodology and use the date upon which Pryce secured higher-paying employment as the end of the back pay period in this case. The parties, however, dispute the date upon which Pryce secured higher-paying employment. The EEOC argues the back pay period extends until Pryce began employment with CRST, i.e., February 7, 2022. The EEOC's argument, however, assumes that Pryce's earnings with Coastal Drilling included the weekly per diem payments of $245.00. As discussed above, Pryce's per diem payments will not be included in his back pay award as wages. Costal Drilling argues that Pryce obtained higher-paying employment on February 7, 2021, when he obtained employment with Heartland Fabrications and earned an average of $789.83 per week. Pryce worked for Heartland Fabrications until July 24, 2021. If Pryce would have remained employed with Coastal Drilling during the same period, he would have made $739.50 per week, which represented Pryce's earnings from Coastal Drilling minus the per diem payments. Based upon the foregoing, the court will utilize the periodic methodology to calculate Pryce's back pay award and holds that the back pay period in this case ended on February 7, 2021, when Pryce obtained a higher-paying job with Heartland Fabrications. Thus, the back pay period applicable to this case is from January 16, 2020, through February 7, 2021.

### D. Whether the prejudgment interest should be measured as simple or compounded interest.

"Title VII authorizes prejudgment interest as part of the back pay remedy in actions against private employers." Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995). An award of prejudgment interest "helps to make victims of discrimination whole." Id. There is a "strong presumption in favor of awarding prejudgment interest, except where the award would result in 'unusual inequities.'" Id. (quoting Green v. USX Corp., 843 F.2d 1511, 1530 (3d Cir.

1988)).  "[A] district court may exercise its discretion to depart from this presumption only when it provides a justification that reasonably supports the departure." Id.

Here, the parties stipulated that "an award of prejudgment interest at the IRS payment rate set forth at 26 U.S.C. § 6621(a)(2) is appropriate." (ECF No. 92 ¶ 16.) The parties disagree, however, with respect to whether the award of prejudgment interest should be simple interest or compounded quarterly. One district court has explained:

> As is true with the interest rate, there is no clear uniformity on the issue of compound versus simple interest when calculating the prejudgment interest amount. Some courts using Section 6621 as the basis for prejudgment interest have calculated simple interest. See, e.g., Supinski, 2012 WL 2905458, at *4. Others have calculated annual compound interest. See, e.g., Frazier v. Southeastern Trans. Auth., 814 F. Supp. 11, 14 (E.D. Pa. 1993). Others have calculated quarterly compound interest. See, e.g., E.E.O.C. v. Reads, Inc., 759 F. Supp. 1150, 1162 n. 20 (E.D. Pa. 1991). The IRS uses a daily compounded rate for calculating Section 6621 overpayments and underpayments. See I.R.C. § 6622.
>
> The plaintiff seeks prejudgment interest compounded quarterly. The court agrees that compounding interest is better able to make the plaintiff whole with respect to his back pay as it takes into account the lost time value of money. See Mars, Inc. v. Coin Acceptors, Inc., 513 F. Supp.2d 128, 137 (D.N.J. 2007) (explaining the justification for compounding interest under Section 1961 in patent infringement cases as a need to include within the damages the lost use of money over time—its time value). However, the court finds the better method to be interest compounded annually, not quarterly. This strikes some balance between taking no account of the time value of money and penalizing the defendant for the length of a case, which will often take several years to resolve.

Moffitt v. Tunkhannock Area Sch. Dist., No. CV 3:13-1519, 2017 WL 319154, at *19 (M.D. Pa. Jan. 20, 2017).

The court agrees with the approach taken in Moffitt. Awarding simple interest does not account for the lost time value of Pryce's money. On the other hand, awarding prejudgment interest compounded quarterly would overly punish defendants for the length of this case. There has been

no argument or evidence presented to this court to show that defendants caused any unreasonable delay in this case. Under those circumstances, Pryce's back pay award shall include an award of prejudgment interest at the IRS payment rate set forth at 26 U.S.C. § 6621(a)(2) compounded annually.

### E.  The award of compensation to negate negative tax implications

The EEOC requests the court award Pryce an additional sum to account for the negative tax consequences that will result from the back pay award, i.e., a "tax gross up." Perez v. Lloyd Indus., Inc., No. 16-CV-1079, 2019 WL 3765657, at *6 (E.D. Pa. Aug. 9, 2019) (citing Eshelman v. Agere Sys., Inc., 554 F.3d 426, 441 n.8 (3d Cir. 2009)). The EEOC calculated the negative tax consequences it believes will occur after the back pay award. Costal Drilling does not dispute the calculations set forth by the EEOC; rather, Coastal Drilling argues that the EEOC failed to satisfy its burden to show the extent of Pryce's injury as a result of the back pay award because the EEOC did not present to the court "a report from a financial or economic expert that describes the basis for and the amount of the tax offset." (ECF No. at 17.) In its reply brief, the EEOC argues that expert testimony is not required to award the tax offset because the calculation is a "matter of arithmetic" based upon Pryce's undisputed income. The EEOC explains:

> The applicable tax rates for each relevant tax year, along with the head of household standardized deduction for each year, are matters that are subject to judicial notice and are readily available to the Court. See Fed. R. Evid. 201(b)(2). To calculate Mr. Pryce's increased-tax offset award, the Court need only apply the applicable deductions and tax rates that are subject to judicial notice to the undisputed facts regarding Mr. Pryce's income during the relevant tax years. See ECF No. 94, p. 18-22. This computation "requires only arithmetic, not economic forecasting, and does not require expert testimony." McKenna, 2009 WL 2230771, at *3. Whether or not such testimony would be helpful under Fed. R. Evid. 702, it is not mandatory under the relevant case law. Any other rule has…substantial, adverse legal and public policy ramifications….Accordingly, the Court should award Mr. Pryce an increased-tax offset award in the amount calculated by EEOC. See ECF No. 94, p. 18-22; ECF No. 94-4.

(ECF No. 100 at 4-5.)

Back pay awards under Title VII are taxable in the year paid. Eshelman v. Agere Sys.,

Inc., 554 F.3d 426 (3d Cir. 2009) (citing Comm'r of Internal Revenue v. Schleir, 515 U.S. 323

(1995), and Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 898 (3d Cir. 1993)). The recipient

of a back pay award, therefore, may experience negative tax consequences as a result of the

award. The Third Circuit Court of Appeals has explained:

> [E]mployees may be subject to higher taxes if they receive a lump sum back
> pay award in a given year. Put another way, receipt of a lump sum back pay award
> could lift an employee into a higher tax bracket for that year, meaning the employee
> would have a greater tax burden than if she were to have received that same pay in
> the normal course.

Eshelman, 554 F.3d at 441.

The majority of the courts of appeals, including the Third Circuit Court of Appeals, have

held that district courts—pursuant to their broad equitable powers granted by employment

discrimination statutes like Title VII—may "award a prevailing employee an additional sum of

money to compensate for the increased tax burden a back pay award may create." Eshelman, 554

F.3d at 441-42;  BARBARA T. LINDEMANN, PAUL GROSSMAN, GEOFF WEIRICH, EMPLOYMENT

DISCRIMINATION LAW 41-22 (Geoff Weirich ed., Bloomberg Law 2020) (1983). The Third

Circuit Court of Appeals in Eshelman, a case arising under the ADA, explained that its holding

was "driven by the 'make whole' remedial purpose of the antidiscrimination statutes. Without

this type of equitable relief in appropriate cases, it would not be possible 'to restore the employee

to the economic status quo that would exist but for the employer's conduct.'" Id. at 442 (quoting

In re Cont'l Airlines, 125 F.3d 120, 135 (3d Cir. 1997)).

Employees, however, are not presumptively entitled to a tax gross up as part of the back

pay award; rather, employees have the burden to show by a preponderance of the evidence "the

extent of the injury they have suffered." <u>Id.</u> at 443; <u>Arku-Nyadia v. Legal Sea Foods, LLC</u>, No. CV181089SDWLDW, 2022 WL 958465, at *3 (D.N.J. Mar. 29, 2022) ("[T]he Court must be satisfied by a preponderance of the evidence that damages should be awarded."). "District courts are granted wide discretion to "locate 'a just result' " regarding the parameters of the relief granted in the circumstances of each case." <u>Id.</u> at 440 (citing <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 424 (1975)).

Here, Coastal Drilling argues that the EEOC did not satisfy its burden to show that Pryce is entitled to a tax gross up award because the EEOC did not present the court with "a report from a financial or economic expert that describes the basis for and the amount of the tax offset." (ECF No. at 17.) According to the EEOC, however, the calculation of the negative tax consequences of Pryce's back pay award is based upon arithmetic, which does not require an expert opinion. The EEOC argues that "[t]he applicable tax rates for each relevant tax year, along with the head of household standardized deduction for each year, are matters that are subject to judicial notice and are readily available to the Court[,]" and, therefore, the court should rely upon the calculation of the tax gross up provided by the EEOC. (ECF No. 100 at 4.) In support of its position, the EEOC cites to decisions from within the Third Circuit in which courts have held "that expert testimony is not required to support a prevailing employee's claim for equitable monetary remedies, such as front pay and prejudgment interest." (<u>Id.</u> at 2.)

The EEOC, however, did not cite any decision from within the Third Circuit in which a court awarded a plaintiff *a tax gross up* without reliance (at least in part) upon an expert tax calculation; rather, courts within the Third Circuit rely upon calculations provided by experts to support tax gross ups awards. <u>See e.g.,</u>, <u>Eshelman</u>, 554 F.3d at 442 ("In support of her motion for relief, Eshelman submitted an affidavit from an economic expert who calculated the amount of

19

tax-effect damages based upon the back pay award, the applicable tax rates, and Eshelman's income tax returns for the appropriate years"); Kissinger v. Mennonite Home, Civ. A. 20-3000, 2022 WL 596300, at *1 (E.D. Pa. Feb. 28, 2022) (awarding a tax gross up with respect to the plaintiff's front pay and back pay awards in reliance upon the calculation of an economic expert); Perez, 2019 WL 3765657, at *8 (awarding a tax gross up based upon the calculations of an expert in economic loss models); O'Neill v. Sears, Roebuck and Co., 108 F.Supp.2d 443, 448 (E.D. Pa. 2000) (awarding a tax gross up based upon the opinion and calculations of an economic expert presented by the plaintiff at trial).

On the other hand, courts within the Third Circuit reject requests for tax gross ups that are not supported by independent expert tax calculations. Moffitt v. Tunkhannock Area Sch. Dist., Civ. A. No. 3:13-1519, 2017 WL 319154, at *21 (M.D. Pa. Jan. 20, 2017) (holding that the plaintiff "needed to submit more than his own personal calculations to obtain an award" and rejecting a letter from a managing partner of a tax firm because he did not personally calculate the tax effect of the award and relied upon the numbers provided to him by the plaintiff); Shovlin v. Timemed Labeling Systems, Inc, Civ. Action No. 95-4808, 1997 WL 102523, *3 (Feb. 28, 1997) (holding that "the court is not inclined to engage in the speculative task of determining the Plaintiff's future tax liability" with respect to the award for front pay and back pay).

In any event, the tax calculation provided by the EEOC in this case is insufficient to satisfy the EEOC's burden to show the negative tax consequences suffered by Pryce as a result of the back pay award. The EEOC's calculations are based upon its arguments that: (1) the back pay award should include the per diem payments; and (2) the back pay period terminated when Pryce began employment with CRST. As set forth in this opinion, however, the per diem payments will not be included in the back pay award and the back pay period ended when Pryce

began higher-paying employment with Heartland Fabrications. Under those circumstances, even if an expert calculation is not required for this court to award a tax gross up, the EEOC's calculation are erroneous and not a sufficient basis upon which this court may grant a tax gross up award. The EEOC's request for a tax gross up award for Pryce is, therefore, denied.

This court, however, is inclined to grant Pryce a tax gross up award to the extent he will suffer negative tax consequences as a result of the back pay award contemplated by this opinion. The denial of the EEOC's request for a tax gross up award is, therefore, without prejudice to the EEOC making a renewed request based upon evidence of the appropriate calculation for that award. The parties shall meet and confer with respect to the appropriate calculation. The parties may—in good faith—agree upon a calculation of the tax gross up and submit the calculation to the court. If Coastal Drilling disputes the EEOC's calculation of the tax gross up, the EEOC should present to the court an expert calculation of Pryce's tax gross up with respect to the back pay (as calculated in accordance with this opinion). If Costal Drilling intends to challenge the EEOC's calculation, it should provide a counter calculation with respect to the appropriate tax gross up amount with respect to the back pay award contemplated by this opinion. Schultz v. NW Permanente P.C., Crim. A. No. 3:20-626, 2022 WL 2072602, at *7 (D. Or. June 9, 2022) (ordering the parties to "jointly propose a tax offset amount" and, if the parties could not agree, to "file a single joint status report conveying their respective positions"); Kissinger, 2022 WL 596300, at *2 (relying upon the plaintiff's expert's calculation of the tax gross up award because, in part, the defendant had "done away with its opportunity to concretely inform…[the] Court what should be done in connection with the tax consequences" of the front pay and back pay awards because it "failed to provide the Court with any counter calculations").

**IV.    Conclusion**

21

Pryce's back pay award shall be calculated without inclusion of the per diem payments, and shall be based upon the time period beginning on January 16, 2020, and ending on February 7, 2021. Prejudgment interest shall be compounded on an annual basis. On or before August 16, 2023, the parties shall meet and confer and file jointly with the court a proposed order awarding Pryce the equitable remedies to which he is entitled in accordance with this opinion.

The parties' proposed order shall include the award of a tax gross up to the extent the parties agree upon the calculation of the tax gross up award. If the parties do not agree upon the calculation of the tax gross up award, the EEOC, on or before August 16, 2023, may renew its request for a tax gross up award supported by an expert calculation of the negative tax consequences that will be suffered by Pryce as a result of the back pay award (as contemplated by this opinion). If Coastal Drilling objects to that calculation, Coastal Drilling may file a response in opposition no later than August 23, 2023, which must be supported by an expert calculation describing the basis for the opposition.

**BY THE COURT,**

**Dated:** July 28, 2023                              **/s/ JOY FLOWERS CONTI**
                                                      Joy Flowers Conti
                                                      Senior United States District Court Judge